

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-23-00515-CR, 04-23-00516-CR, & 04-23-00517-CR

Matias P. **BRIONES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 229th Judicial District Court, Duval County, Texas
Trial Court Nos. 19-CRD-25S1, 19-CRD-26S1 & 19-CRD-27S1
Honorable Baldemar Garza, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:         Luz Elena D. Chapa, Justice
                 Beth Watkins, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: August 7, 2024

AFFIRMED

Matias P. Briones appeals his multiple convictions in three cases for aggravated sexual assault of a child, indecency with a child, and prohibited sexual conduct. On appeal, Briones asserts a jury charge error deprived him of a unanimous verdict on one count, the evidence is insufficient to support his conviction for aggravated sexual assault, and the State's improper jury argument warranted a mistrial. We affirm the trial court's judgments.

**BACKGROUND**

In September 2017, one of Briones's daughters, A.B., made an outcry that Briones had sexually abused her several years earlier. During the ensuing investigation, A.B.'s older sisters, T.A.B. and T.B., made their own outcries alleging similar acts of sexual abuse by Briones against them when they were younger.

Briones was separately indicted in three cases. In Case #1, Briones was charged with continuous sexual abuse of a young child (Count 1) and prohibited sexual conduct (Count 2). TEX. PENAL CODE §§ 21.02, 25.02. In Case #2, he was charged with aggravated sexual assault of a child (Count 1), and two counts of indecency with a child by contact (Counts 2 and 3). *Id*. §§ 22.021, 21.11. In Case #3, Briones was charged with aggravated sexual assault of a child (Count 1), sexual assault of a child (Count 2), and prohibited sexual conduct (Count 3). *Id*. §§ 22.021, 22.011, 25.02. Briones pled not guilty to all charges. The three cases were consolidated for trial.

At trial, the State presented the testimony of the three complainants who each testified in detail about several incidents of sexual contact with and penetration of their sexual organs by Briones when they were younger. The defense evidence consisted of photographs of Briones and his daughters, Briones's recorded interview with investigators in which he denied guilt, and his girlfriend's testimony. In Case #1 (T.A.B.), the jury returned a verdict finding Briones not guilty of continuous sexual abuse but guilty of the lesser-included aggravated sexual assault of a child on Count 1 and guilty of prohibited sexual conduct on Count 2. In Case #2 (T.B.), the jury found Briones not guilty of aggravated sexual assault of a child but guilty of the lesser-included indecency with a child by contact in Count 1 and guilty of indecency with a child by contact in Counts 2 and 3. Finally, in Case #3 (A.B.), the jury found Briones not guilty of aggravated sexual assault of a child but guilty of the lesser-included indecency with a child by contact in Count 1,

not guilty of sexual assault of a child but guilty of the lesser-included indecency with a child by contact in Count 2, and guilty of prohibited sexual conduct in Count 3.

In Case #1, the trial court sentenced Briones to 50 years' imprisonment on the aggravated sexual assault of a child (Count 1) and 20 years' imprisonment on the prohibited sexual conduct (Count 2), respectively. In Cases #2 and #3, Briones was sentenced to 20 years' imprisonment on each count. The trial court ordered the sentences in each case to be served concurrently but granted the State's request for cumulative sentences which resulted in a total of 90 years' imprisonment on the three cases. Briones appealed.

### JURY CHARGE ERROR: UNANIMITY OF VERDICT (CASE #1)

In his first and second issues, Briones challenges his conviction on the lesser-included offense of aggravated sexual assault of T.A.B. in Case #1. In his first issue, Briones argues his constitutional and statutory right to a unanimous jury verdict was violated by the disjunctive submission in the jury charge of the two underlying criminal acts (penetration of the female sexual organ and contact with the female sexual organ) for aggravated sexual assault. In his second issue, Briones asserts there is insufficient evidence to support a finding of guilt on one of those underlying criminal acts (penetration) and because it is unknown which specific act the jury found, his conviction must be reversed. We address the potential jury charge error first.

We apply a two-step process in reviewing alleged jury charge error. *Lozano v. State*, 636 S.W.3d 25, 29 (Tex. Crim. App. 2021); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). We first determine whether error occurred and, if so, we determine whether sufficient harm resulted from the error to require reversal. *Lozano*, 636 S.W.3d at 29; *Ngo*, 175 S.W.3d at 743. Briones concedes he did not object to the purported charge error. Therefore, if error exists, we will reverse his conviction only if the record demonstrates he suffered egregious harm. *Ngo*, 175 S.W.3d at 743-44. "Egregious harm exists if the error affects the very basis of the defendant's case,

deprives him of a valuable right, or vitally affects a defensive theory." *Lozano*, 636 S.W.3d at 29; *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (reversal for unobjected-to charge error is required "only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial").

### *Error in the Jury Charge*

Jury unanimity, required by the state constitution, means that each juror must agree that the defendant committed "the same, single, specific criminal act" as the basis for the offense. *Ngo*, 175 S.W.3d at 745. Thus, "[w]hen the State charges different criminal acts, regardless of whether those acts constitute violations of the same or different statutory provisions, the jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees upon the commission of any one of these criminal acts." *Id*. at 744; *see Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) ("[t]he unanimity requirement is undercut when a jury risks convicting the defendant of different acts, instead of agreeing on the same act for a conviction"). Briones argues that, in the absence of a specific unanimity instruction on aggravated sexual assault, there is no assurance that the jury unanimously agreed on which criminal act (penetration or contact) he committed to establish aggravated sexual assault.

"[T]he requirement of jury unanimity is not violated by a jury charge that presents the jury with the option of choosing among various alternative manner and means of committing the same statutorily defined offense." *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim App. 2014) ("different modes of commission" may be properly submitted disjunctively in a jury charge when alleged in a single count). In other words, a jury is not required to be unanimous with respect to whether a defendant penetrated the victim's sexual organ by using his penis, finger, or tongue, *i.e.*, the manner and means of commission, because the act of penetration is the gravamen of the offense. *Id*. at 95-96 (construing subsection 22.021(a)(1)(A)(i)).

However, allegations of both **penetration** of the sexual organ and **contact** with the sexual organ "involve distinct statutorily defined types of conduct" that are proscribed by different subsections of the aggravated sexual assault statute. *Id*. at 96-97; *see also Vick v. State*, 991 S.W.2d 830, 832-33 (Tex. Crim. App. 1999) (holding that allegations of aggravated sexual assault of a child under different subsections of 22.021(a)(1)(B) constitute discrete statutorily defined offenses for double jeopardy purposes). In *Hernandez v. State*, 631 S.W.3d 120, 124 (Tex. Crim. App. 2021), the court confirmed that within the aggravated sexual assault statute "[s]eparate acts of contact and penetration are separate offenses" which require jury unanimity. *Id.* (explaining that, "[s]ex offenses focus on the prohibited conduct, and the Legislature intended punishment for each prohibited act;" thus, the "allowable unit of prosecution" distinguishes separate offenses for purposes of jury-unanimity requirements).

Here, the application paragraph on aggravated sexual assault of a child instructed the jury to find Briones guilty if it believed beyond a reasonable doubt that Briones "on or about September 22, 2010, through September 21, 2011 . . . did then and there intentionally and knowingly cause the penetration of the sexual organ of [T.A.B.] . . . by defendant's finger; *or* did then and there intentionally and knowingly cause the sexual organ of [T.A.B.] . . . to contact the mouth of defendant." (emphasis added). Thus, as in *Jourdan*, the jury could have convicted Briones of aggravated sexual assault without unanimously agreeing whether he penetrated T.A.B.'s sexual organ or caused her sexual organ to contact his mouth. *See Jourdan*, 428 S.W.3d at 97 (discussing the separate offenses of penile contact versus digital penetration). Because the charge did not require unanimity on the prohibited act, *i.e.*, penetration or contact, it was erroneous. *See id*.; *Hernandez*, 631 S.W.3d at 124. Therefore, we must decide whether the charge error caused Briones egregious harm.

### *Egregious Harm Analysis*

Egregious harm is a "high and difficult standard" to meet and must consist of actual rather than merely theoretical harm. *Villarreal*, 453 S.W.3d at 433. Actual egregious harm exists only if the charge error affected "the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally affect[ed] a defensive theory." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). In evaluating whether egregious harm arose from charge error, we consider the following factors: (1) "the entirety of the jury charge;" (2) "the state of the evidence, including the contested issues and weight of probative evidence;" (3) "the arguments of counsel;" and (4) "any other relevant information revealed by the trial record as a whole." *Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171; *Lozano*, 636 S.W.3d at 29. The harm analysis is fact specific and is conducted on a case-by-case basis. *Arrington*, 451 S.W.3d at 840.

Considering the jury charge as a whole, the jury received a general unanimity instruction stating, "[y]ou may return a verdict only if all twelve of you agree on this verdict." In Count 1, the charge submitted the charged offense of continuous sexual abuse of a young child and the lesser-included offenses of aggravated sexual assault, indecency with a child by contact, and indecency with a child by exposure. The application paragraph for continuous sexual abuse expressly stated, "[n]ow bearing in mind the foregoing instructions and definitions, if you unanimously believe from the evidence beyond a reasonable doubt that . . . ." The application paragraph for aggravated sexual assault omitted the word "unanimously," as did the application paragraphs on the other lesser-included offenses as well as Count 2 on prohibited sexual conduct. The jury was properly instructed that continuous sexual abuse does not require unanimous agreement on *which specific acts* of sexual abuse were committed by the defendant, merely that the defendant committed any

two or more of the alleged acts of sexual abuse, during the 30-day period. *See* TEX. PENAL CODE § 21.02(d); *Carmichael v. State*, 505 S.W.3d 95, 106 (Tex. App.—San Antonio 2016, pet. ref'd).

Briones contends the omission of the word "unanimously" from the charge on aggravated sexual assault caused him egregious harm because it allowed a potential misperception by the jury that the previous non-unanimity instruction for continuous sexual abuse applied. In other words, Briones argues an express unanimity instruction was necessary to instruct the jury that to convict him of aggravated sexual assault, as opposed to continuous sexual abuse, it must unanimously agree on which of the two specific acts of sexual assault occurred (penetration or contact). Absent a unanimity instruction, Briones argues some jurors may have believed contact occurred while others believed penetration occurred, resulting in a non-unanimous verdict on aggravated sexual assault. Because the jury charge as a whole failed to advise the jury of the proper unanimity requirement, we conclude this factor weighs in favor of finding egregious harm, but no more so than any other factor. *See Arrington*, 451 S.W.3d at 841.

Briones argues the State's closing argument stressing the jury did not need to be unanimous on which two of the three acts of sexual abuse were committed for continuous sexual abuse exacerbated the risk of harm on the aggravated sexual assault charge. However, the prosecutor never mentioned the lesser-included aggravated sexual assault in his closing argument on Count 1; he focused solely on continuous sexual abuse as charged in the indictment. It is speculation to assume that any juror would have thought the continuous sexual abuse law applied to a wholly different offense, aggravated sexual assault. *See Almanza*, 686 S.W.2d at 171 (theoretical harm falls short of the requirement of actual egregious harm to support a reversal). Even if the State's closing argument had expressly (and incorrectly) stated unanimity was not required on "contact versus penetration" for aggravated sexual assault, as the State did in *Jourdan*, that factor would be an important consideration, but not the only consideration, in our egregious harm analysis. *See*

*Jourdan*, 428 S.W.3d at 98. "It is also relevant to the egregious harm analysis to inquire about the likelihood that the jury would in fact have reached a non-unanimous verdict on the facts of the particular case." *Id.*

Turning to the next factor, we consider the entire record to determine whether the evidence made it more or less likely that the jury charge caused Briones actual harm. *See Arrington*, 451 S.W.3d at 841. In doing so, we consider the weight of the probative evidence as well as any contested issues. *Lozano*, 636 S.W.3d at 29; *Villarreal*, 453 S.W.3d at 433. However, "the mere existence of conflicting testimony surrounding a contested issue does not necessarily trigger a finding of egregious harm." *Villarreal*, 453 S.W.3d at 436; *Olivas v. State*, 202 S.W.3d 137, 148 (Tex. Crim. App. 2006). We must consider "the plausibility of the evidence raising the defense." *Lozano*, 636 S.W.3d at 29 (quoting *Villarreal*, 453 S.W.3d at 436). Here, Briones's defensive theory was that his actions were innocent in nature and he was not guilty of any form of sexual abuse, *i.e.*, the three complainants were lying. He pointed to his denial of guilt in his police interview, the absence of any corroborating medical evidence, and his girlfriend's testimony that his daughters would "have a fit" if they did not immediately get what they wanted. However, the record shows the jury assessed both sides' credibility and disbelieved the defensive evidence. By finding Briones guilty of aggravated sexual assault, the jury necessarily found T.A.B.'s detailed testimony about the incidents of sexual assault to be credible and rejected Briones's version of the events. Here, as in *Jourdan*, whether or not the jury believed Briones's wholesale denial of guilt "was not a function of its ability to agree whether he penetrated her sexual organ digitally or contacted it with his [mouth]." *See Jourdan*, 428 S.W.3d at 98. "Thus, any error in the jury charge in failing to require such agreement did not serve to undermine the particular defense [Briones] chose to pursue." *Id.*; *see Arrington*, 451 S.W.3d at 842 (defendant's trial strategy presenting jury with an "all or nothing decision" on guilt or innocence weighs against a finding of egregious harm);

*see also Ruiz v. State*, 272 S.W.3d 819, 826-27 (Tex. App.—Austin 2008, no pet.) (state of the evidence weighed against egregious harm finding because defendant did not argue he was guilty of only some charges, but asserted he committed none of the alleged conduct and complainant was lying). Based on the record, the charge error did not harm Briones's defense.

Based on the evidence in this case, we also cannot say the error in the jury charge affected the very basis of the case or deprived Briones of a valuable right. *See Lozano*, 636 S.W.3d at 29; *Villarreal*, 453 S.W.3d at 433. Briones argues the charge error was egregiously harmful because there is "no evidence" to support a finding on one of the alternative acts, penetration of T.A.B.'s sexual organ by his finger; therefore, if any juror found him guilty based on digital penetration rather than the alternate contact by mouth, "the evidence is insufficient to support the finding." This is the same argument Briones makes in Issue No. 2 of his brief. Sufficiency of the evidence is judged by a hypothetically correct jury charge which in this case would authorize a finding of aggravated sexual assault based on "penetration by any means" of T.A.B.'s sexual organ. TEX. PENAL CODE § 22.021(a)(1)(B)(i) (person commits aggravated sexual assault of a child if he intentionally and knowingly caused the penetration of the child's sexual organ "by any means"); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (sufficiency of the evidence is determined using hypothetically correct jury charge, which is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."); *Borton v. State*, 683 S.W.3d 459, 464 (Tex. App.—San Antonio 2023, no pet.) (same). As noted above, allegations that penetration was achieved by a particular manner and means—*i.e.*, the defendant's finger, penis, or mouth—do not require unanimity from the jury. *Jourdan*, 428 S.W.3d at 95-96 (jury is not required to be unanimous with respect to whether a defendant penetrated the victim's sexual organ by using his penis, finger, or tongue).

We agree that T.A.B.'s testimony about an incident in which Briones rubbed his fingers over her vagina but "only on the outside" is not sufficient to establish digital penetration of her sexual organ. However, the record contains specific testimony by T.A.B. about another incident that constitutes the offense of penetration of her sexual organ by a different means — by Briones's tongue (mouth). T.A.B. testified that on that occasion Briones was licking her vagina and then "stuck his tongue inside me." This testimony by T.A.B. alone is sufficient evidence to support a finding of "penetration" for aggravated sexual assault. *See Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (to prove penetration of female sexual organ, State need only present evidence of "entry" or "passing through" of the outer vaginal lips; proof of entry into the vaginal canal is not required); *Green v. State*, 476 S.W.3d 440, 447 (Tex. Crim. App. 2015) (citing *Vernon*'s definition of penetration); *see also Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990) (sexual assault victim's testimony alone may be sufficient to meet the State's burden of proof); *Ruiz v. State*, 891 S.W.2d 302, 304 (Tex. App.—San Antonio 1994, pet. ref'd) (same).

In addition, T.A.B.'s testimony about Briones licking her vagina and inserting his tongue also constitutes sufficient evidence of the other alternative act for aggravated sexual assault—contact with the sexual organ by mouth. *See Jourdan*, 428 S.W.3d at 97 (in a single transaction, penetration of sexual organ necessarily includes act of contacting the sexual organ; the contact is subsumed by the penetration) (internal citations omitted). On this record, it is logical to infer that the jury unanimously agreed, *at a minimum*, that Briones committed aggravated sexual assault of T.A.B. by contacting her vagina with his mouth. Briones concedes the evidence is sufficient to support his conviction if the jury's finding of guilt was based on contact by mouth.

We hold that a rational trier of fact could have found beyond a reasonable doubt based on T.A.B.'s testimony that both alternative acts occurred—Briones penetrated her sexual organ with his tongue and his mouth contacted her sexual organ. Because the entire record contains sufficient

evidence to support a jury finding on both acts of aggravated sexual assault, the state of the evidence fails to show Briones suffered actual harm as a result of the disjunctive charge error; therefore, this factor weighs heavily against a finding of egregious harm.

Based on our analysis of the factors in view of the entire record, we overrule Briones's first issue.

### SUFFICIENCY OF THE EVIDENCE: AGGRAVATED SEXUAL ASSAULT (CASE #1):

Briones rephrases the same egregious harm argument from Issue No. 1 as a sufficiency argument in Issue No. 2, arguing there is no evidence of digital penetration. We have already addressed his sufficiency argument within our Issue No. 1 analysis and concluded the evidence is sufficient to support his conviction of aggravated sexual assault based on penetration of as well as contact with T.A.B.'s sexual organ. His second issue is overruled.

### DENIAL OF MISTRIAL: IMPROPER JURY ARGUMENT

In his last issue, which applies to all three cases, Briones argues the trial court erred in denying his motion for mistrial based on the prosecutor's remark during closing argument that he expected to see the jury in the punishment phase. Briones asserts the comment was improper jury argument and was so prejudicial and inflammatory that it denied him a fair trial.

We review the trial court's denial of a mistrial for an abuse of discretion and will uphold the ruling as long as it falls within the zone of reasonable disagreement. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). In making that evaluation, we view the evidence in the light most favorable to the trial court's ruling and consider only the arguments before the court at the time of its ruling. *Id.*

"[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App.

2008); *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). Jury argument that falls outside these bounds is improper but is generally cured by an instruction to disregard, which we must presume the jury followed. *Brown*, 270 S.W.3d at 572; *Freeman*, 340 S.W.3d at 727-28.

In this case, the prosecutor's reference to the punishment phase occurred at the end of a lengthy summation of the evidence and in the following context:

> Up to now, I have been the voice of our victims. I've been their advocate in their quest for justice, and justice for what this man their dad did to them. Today, I'm passing that on to you. You are now the voice to that little girl there, those girls over there. You have the voice. And I assure you your guilty verdict is going to be heard way past Duval County … These girls may not be your daughters, but they're daughters of Duval County, and it's on you to do something for them.
>
> ***
>
> This man is guilty. Take all the time you want. Think about what you want. But you know, you know what the right answer is. You know what that answer is. This man is guilty of each and every count that he has been charged with in every indictment.
>
> I want to thank you for your time and your attention. I want to thank you for the job you're going to be doing for these girls. ***I anticipate seeing you again in the punishment phase***. Thank you so much. Now is the time to go back there and do what you need to do. And that's find this man guilty.

(emphasis added).

Briones objected that the comment was improper argument for the guilt/innocence phase and requested an instruction to disregard. The trial court instructed the jury, "you're not to consider that statement at this stage of the proceeding." Briones then moved for a mistrial, arguing the instruction to disregard could not cure the extreme prejudice created by the prosecutor's injection of his punishment before the jury deliberated on his guilt. The trial court declined to grant a mistrial.

On appeal, Briones argues the prosecutor's comment was not part of a proper summation of the evidence or plea for law enforcement, but rather was "clearly calculated to inflame the minds

of the jury" because it disregarded their duty to weigh the evidence and determine guilt/innocence prior to considering the concept of punishment. Briones contends the remark was so inflammatory that it undermined the efficacy of the instruction to disregard and necessitated a mistrial. The State replies the comment was a reference to the weight of the evidence and the prosecutor's confidence in the State's case as part of his summation of the evidence and thus was not improper jury argument.

In the context of this appeal by Briones, we do not revisit whether the State's argument was improper. Because the trial court sustained Briones's objection to improper jury argument and granted his request for an instruction to disregard the comment, the only issue before us is whether the trial court abused its discretion in denying Briones's request for a mistrial. *See Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004) (when the trial court sustains an objection to improper argument and grants a requested instruction to disregard, the only adverse ruling and thus the only proper issue for appeal is whether the trial court abused its discretion in denying a mistrial); *Saavedra v. State*, No. 04-16-00747-CR, 2017 WL 5615577, at *3 (Tex. App.—San Antonio Nov. 22, 2017, no pet.) (mem. op., not designated for publication) ("When a trial court sustains an objection and gives the jury an instruction to disregard, but denies a motion for mistrial, an appellate court assumes, without deciding, that the argument was improper and only looks to whether the court abused its discretion when it denied the motion for mistrial.") (internal citation omitted). Thus, we assume the prosecutor's remark constituted improper jury argument and proceed to determine whether the misconduct was curable by the instruction to disregard or necessitated a mistrial.

A mistrial is an extreme remedy that should be granted "only when residual prejudice remains" after less drastic alternatives, such as an instruction to disregard, are considered. *Ocon*, 284 S.W.3d at 884-85; *Hawkins*, 135 S.W.3d at 77 (mistrial is appropriate in "extreme

circumstances" for narrow class of highly prejudicial and incurable errors). In determining whether an error warranted a mistrial, the reviewing court looks to the particular facts of the case. *Ocon*, 284 S.W.3d at 884; *Gonzalez v. State*, 608 S.W.3d 98, 107-08 (Tex. App.—San Antonio 2020, pet. ref'd). In evaluating whether improper jury argument was not curable by an instruction to disregard and warranted a mistrial, the appellate court balances the following factors: "(1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011). A mistrial is warranted only when the improper jury argument is "so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." *Id.* (quoting *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004)); *Hawkins*, 135 S.W.3d at 77 (the three factors involve the same considerations that form a harm analysis).

In assessing the severity of the misconduct, we view the statement within the full context of the closing argument and entire record to determine if it was manifestly improper. *See Brown*, 270 S.W.3d at 570, 573. The reference to the punishment phase was an isolated comment at the end of the closing argument; it was not repeated at any time. The improper comment was made within the context of a lengthy summation of the evidence in which the prosecutor stressed the strength of the evidence of guilt on each of the multiple charges against Briones. It also followed an argument telling the jurors they were now the "voice of the victims" and calling for justice for the victims through a guilty verdict on each charge. A reasonable juror could have construed the prosecutor's comment that he "anticipated" seeing the jury again during the punishment phase as an expression of his confidence in the strength of the State's evidence to warrant guilty verdicts on all the charges, rather than a suggestion that Briones should be punished regardless of whether

the State met its burden of proof. *See Russell v. State*, 290 S.W.3d 387, 393 (Tex. App.—Beaumont 2009, no pet.) (viewing State's improper comment telling jury it was their job to punish people for "doing wrong" in context of full argument at guilt/innocence, it "likely did not suggest to a reasonable juror that the State believed that [defendant] needed punishment for his 'wrongdoing' regardless of the strength of the evidence"). Viewed in context, the comment is similar to the unobjected to comment by the prosecutor that he had "no doubt there will be a unanimous vote of guilty." Although improper, the prosecutor's single comment, viewed in the context of the record and argument as a whole, was not so egregiously prejudicial in nature that it was incurable and deprived Briones of his right to a fair trial.

With respect to the efficacy of curative measures, we begin with the presumption that the jury followed the trial court's instruction to disregard the comment. *See Brown*, 270 S.W.3d at 572; *see also Freeman*, 340 S.W.3d at 727-28. There is nothing in the record to suggest the jury did not abide by the instruction. Briones does not refer us to a case holding that a prosecutor's closing argument in the guilt/innocence phase which refers to the punishment phase or the defendant's punishment is necessarily so inflammatory that it cannot be cured by an instruction to disregard. And we have found none. Not only did the trial court instruct the jury to disregard the improper comment at the time, it also instructed the jury before it retired to deliberate that the State must meet its burden of proof beyond a reasonable doubt for them to return a guilty verdict and that the attorneys' comments are not evidence. We conclude the contemporaneous instruction to disregard, along with the other instructions in the charge, operated to cure any potential that the improper comment had to harm Briones's right to a fair trial.

Finally, Briones asserts the improper argument struck at his "core defense" that he was innocent of all charges, and therefore amounted to incurable prejudice warranting a mistrial. However, based on the record, the jury could have reasonably found substantial evidence of

Briones's guilt. Each victim testified in detail to acts of sexual abuse by various means that Briones committed against them when they were approximately middle school age. T.A.B., the oldest, testified that when she was in fifth grade Briones pulled her pants down and rubbed the outside of her vagina with his fingers; on another occasion when she was a little older, Briones cleaned her vagina with a Q-tip and then began licking her vagina and "stuck his tongue inside me" before she pushed him away; the next day, Briones again licked and cleaned her vagina with a Q-tip. T.B. testified that when she was 12 or 13 years old, Briones began touching her, "kissing private parts and putting his penis where it doesn't belong;" in one incident, she was lying on Briones's bed trying to fall asleep when he began touching her all over and "kissing all the way down," which escalated to Briones removing her underwear and moving his penis against her vagina and putting it "inside the lips" of her vagina. A.B. testified she was staying with Briones in June 2017 when he asked if he could "shave her butt;" she declined but eventually gave in and Briones shaved her private area with clippers; he then put his mouth on her vagina and also inserted his finger inside her vagina; the incident ended with Briones taking a photograph of her vagina. In September 2017, A.B. made an outcry to her boyfriend, her sister T.B., her mother, and her aunt. After A.B.'s outcry, T.B. and T.A.B. also made allegations of similar sexual abuse. All three victims testified they have been estranged from their father since 2017.

It is well established that a sexual assault victim's testimony alone may be sufficient to meet the State's burden of proof. *See Villalon*, 791 S.W.2d at 133; *Ruiz*, 891 S.W.2d at 304. Briones concedes in his brief that "all [three] victims gave damning testimony against [him]," but points to the absence of forensic evidence, the recorded police interview in which he denied sexually abusing his daughters and agreed to submit DNA samples and take a lie detector, and his girlfriend's testimony that he "did everything for his daughters" and "the moment . . . they did not have what they wanted, they would have a fit." Briones contends this evidence could have created

doubt in some jurors' minds about his guilt and the prosecutor's comment about the punishment phase "could only have been extremely prejudicial to his . . . core defense." However, as the factfinder, the jury heard this defense evidence and rejected it, choosing to find the three victims' testimony more credible. We conclude that, even absent the improper argument, the jury would have convicted Briones given the substantial evidence of his guilt.

Having considered the State's improper comment in the context of the record as a whole, we hold that the isolated reference to the punishment phase at the end of closing arguments did not amount to the kind of extreme prejudice that warrants a mistrial and did not deprive Briones of a fair trial. Briones's third issue is overruled.

Based on the foregoing reasons, we affirm the trial court's judgments.

Liza A. Rodriguez, Justice

DO NOT PUBLISH